# CHARLESTON.

CHRISTOPHER CLARK *v.* COMMERCIAL CASUALTY INSURANCE COMPANY

(No. 6392)

Submitted May 7, 1929.     Decided May 14, 1929.

*Froe, Capehart & Miller,* for plaintiff in error.
*Sanders, Crockett, Fox & Sanders,* for defendant in error.

WOODS, PRESIDENT:

This is an action to recover under the provisions of an accident policy for loss of time due to an injury sustained by plaintiff by reason of slate falling on his right leg while laboring in a mine.   It appears that the plaintiff is thirty-five

years of age, that he lost his foot when sixteen years of age, and that since that time he has worn a cork leg or foot. It also appears that the artificial foot has in no way interfered with his work in the mines, or otherwise. The insurance company interposed the defense that the plaintiff obtained the policy by fraudulent misrepresentations, which avoid the policy. The trial court sustained this contention, and directed a judgment for the defendant.

The insured made categorical answer to all questions in the application for insurance. It must be assumed that such answers, if true, gave all information required to determine acceptance of the risk, and to avoid the risk or cancel the policy it must be shown that the answers were false and known to be false by the insured. *Massachusetts Bonding & Ins. Co.* v. *Duncan,* 166 Ky. 515, 179 S. W. 472. "A representation in insurance is an oral or written statement made by the assured or his authorized agent to the underwriter or his authorized agent of something as a fact which is untrue, is known to be untrue, and is stated with intent to mislead or deceive, or which is stated positively as true without its being known to be true, and which has a tendency to mislead, such statement relating in both cases to material facts." 3 Joyce on Ins. (2nd Ed.), sec. 1884.

The three questions and answers in the application which have any bearing on this case are: "13. Are your habits of life correct and temperate, and are you in sound condition mentally and physically? Yes. * * * Have you ever had any infirmity, deformity or disease? No. * * * 14. Have you been disabled by either accident or illness, or received medical or surgical attention during the last five years? No. 15. Do you understand and agree that the right to recovery under any policy which may be issued upon the basis of this application shall be barred in the event that any of the foregoing statements, material either to the acceptance of the risk or to the hazard assumed by the Company, is false, or in the event that any one of the foregoing statements is false and made with intent to deceive, or that the insurance hereby applied for will not be in force until the delivery of the policy to you while you are in good health and free from all injury

and that the company is not bound by any knowledge of or statements made by or to any agent unless written hereon, and that you will pay the monthly premium of $2.65 in advance, without notice? Answer: yes.''

Is a man necessarily unsound physically in the sense of the questions propounded because he wears an artificial foot or leg? The plaintiff was in good health at the time he took out the policy and suffered from no infirmities which were making inroads upon his health. He contends that there is a difference between bodily perfection and physical soundness. In the case of *Great Eastern Casualty Co.* v. *Smith,* (Tex. Civ. App.), 174 S. W. 687, it was held that: ''A warranty in an insurance application that applicant was in whole and sound condition, mentally and physically, is not breached by failure to state that he had a leg amputated at the knee, since 'whole' means hale, hearty, strong, sound, and also entire, complete, and 'sound' means hearty, not diseased, and also whole, unimpaired, and 'condition' means state or situation as regards internal or external circumstances or plight, and that construction most favorable to assured will be taken.'' In that case the applicant was required to subscribe to several statements, one of which was to the effect that he had never had fits, etc., and was ''in whole and sound condition mentally and physically.'' The decision there was based on the ground that the language could easily be construed to refer to a well and not diseased state of mind and body apart from the bare fact of having one leg off, while in another meaning the language could refer and extend as well to health as to a whole body. As the statement in the application read, there was ample room for the insured in that case to have understood it to refer to diseases and ailments affecting his general soundness of health, and not specifically to the loss of a limb. And as he could reasonably and fairly have so construed the language, it was not thought that falsity of answer in avoidance of the policy could properly be predicated on the omission to specifically state the fact of the loss of a limb.

In the present case the first question in group thirteen begins with an inquiry as to applicant's habits, whether temperate or not, and ends with an inquiry as to his condition

mentally and physically. It invites a general answer of "yes" or "no", covering the whole question. As framed, it could very easily be construed to refer to his general health. The word "infirmity" in the next question is likewise subject to different interpretations, in some instances referring to condition of health. And the fourteenth question seems to limit all accidents which have disabled to the past five years, and provides several blanks for entries to be made concerning the same. It seems to refer to the state of health, as an element of the risk. No exception was made to this question and answer.

And now, what is the effect of that portion of the last question to the effect that the applicant understands that the insurance applied for will not be in force until the delivery of the policy to him while he is in "good health and free from all injury"? This in the light of the preceding questions would, to the ordinary person, generally be construed to have reference to any change in applicant's condition from the date of the application to the date of the receipt of the policy. May we say under such circumstances that the plaintiff was not in fact "free from all injury", as would affect his general health, at the time of the delivery of the policy? We think not. He acted honestly and without intent to deceive. The injury relied on by the defendant to support its contention was received by the applicant before maturity, and according to his undisputed evidence, in no wise affected his general health at the time of taking out the policy, nor did it directly or indirectly contribute to the accident for which he seeks indemnity under the policy. It clearly appears under the circumstances of the instant case that the representation was not material to the acceptance of the risk, or to the hazard assumed by the company. Our view of this case takes it out of the scope of the holding in *Goodbar* v. *Insurance Co.*, 89 W. Va. 221, where the insurance was accepted on the representation that the applicant had "never been injured."

Holding these views, we are of opinion to and do reverse the judgment of the circuit court, set aside the verdict of the jury, and award the plaintiff a new trial.

<div align="right">

*Reversed; verdict set aside;*
*new trial awarded.*